**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **OLIVET UNIVERSITY,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**DAYAN CANDAPPA,**<br><br>**Defendant.** | **Civil Action No. 25-18777 (CCC) (JSA)**<br><br>**OPINION** |

**JESSICA S. ALLEN, U.S.M.J.**

Before the Court is Defendant's motion to transfer this case to the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1404(a), or, in the alternative, to dismiss this case in part. (ECF Nos. 20 & 24). Plaintiff opposes the motion. (ECF No. 23). No oral argument was heard pursuant to Fed. R. Civ. P. 78(b). Having carefully considered the parties' written submissions, for the reasons set forth below and for good cause shown, Defendant's motion to transfer is **GRANTED**.[1]

## I. BACKGROUND

This defamation lawsuit stems from articles published by Defendant's employer, Newsweek. (*See generally* Compl., ECF No. 1). On the same day Plaintiff filed the instant action, Plaintiff filed a near-identical defamation lawsuit in the Southern District of New York,

[1] Because the Court finds it appropriate to transfer this case, the Court does not reach the merits of Defendant's alternative request to dismiss.

*Olivet University v. Cooper et al.,* Civ. Action No. 25-10537 (JMF) against Newsweek employees (the "New York Action"). (*See generally* New York Compl., attached as Exh. 1 to Decl. of Cameron Stracher, ECF No. 20-2). In both cases, Plaintiff alleges that Defendant conspired with other Newsweek employees to publish defamatory articles about Plaintiff. (*See* Compl., ¶¶ 22-147; New York Compl., ¶¶ 26-251). Indeed, the New York Complaint repeatedly references Defendant, even though he is not a party to the New York Action. (*E.g.,* New York Compl., ¶¶ 3-5, 7-9, 118-37, 139-42, 144-45, 147-48).

Defendant now seeks to transfer this case to the Southern District of New York. In support, Defendant argues that Plaintiff could have filed this case in the Southern District of New York since jurisdiction and venue are proper there. (ECF No. 20-1 at 8). Defendant concedes he is not only subject to personal jurisdiction in New York because he works there and reviewed the subject news articles there, (*id.*), but would consent to personal jurisdiction in the Southern District of New York. (ECF No. 20-3 ¶ 8).

In addition, Defendant contends that a balancing of the relevant considerations weighs in favor of transfer. Specifically, Plaintiff's claims arose from publications in New York not New Jersey; the majority of documents and witnesses, including Defendants in the New York Action, are in the Southern District of New York; transfer would avoid duplicative litigation; and transfer would alleviate the risk of inconsistent results. (ECF No. 20-1 at 9-11). Defendants further argue that Plaintiff's choice of forum is entitled to significantly less weight because the underlying conduct occurred in New York and Plaintiff itself is not based in New Jersey. (*Id.* at 12). Finally, according to Defendant, although he lives in New Jersey, any interest that a New Jersey court may have in adjudicating this case is strongly counterbalanced by the case's significant connections to New York. (*Id.*)

In opposition, Plaintiff contends this case should remain in this District, where Plaintiff chose to file suit. (*See* ECF No. 23 at 24). He questions whether Defendant is subject to personal jurisdiction in New York since he lives in New Jersey. (*Id.* at 27). Plaintiff also argues that this case is not duplicative of the New York Action because the cases name different defendants. (*Id.* at 26). Plaintiff adds that the District of New Jersey is a more convenient venue to litigate the case since Plaintiff has no ties to New York and Defendant could easily obtain any discovery located in New York. (*Id.* at 23,25). Additionally, Plaintiff claims New Jersey courts are less congested than New York ones and that New Jersey has an interest in adjudicating this case, as Defendant lives in New Jersey and New Jersey law governs the defamation claim against him. (*Id.* at 26). Lastly, Plaintiff submits that Defendant's motion to transfer is merely an attempt to forum shop. According to Plaintiff, Defendant previously moved to dismiss Plaintiff's prior suit filed against him in the United States District Court for the Middle District of Florida for lack of personal jurisdiction given Defendant's New Jersey residence. (*Id.* at 18-19, 22).

## II. DISCUSSION

### A. Legal Standard

Section 1404(a) authorizes federal courts to transfer a case to another district "where it may have been brought" when doing so is "in the interest of justice" and serves "the convenience of parties and witnesses." 28 U.S.C. § 1404(a). The decision to transfer a case under Section 1404(a) rests within the sound discretion of the district court. *See Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir. 1973); *Cadapult Graphic Sys., Inc. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 564 (D.N.J. 2000). The purpose of Section 1404(a) "is to prevent the waste of 'time, energy[,] and money' and to 'protect litigants, witnesses[,] and the public against unnecessary inconvenience and expenses.'" *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 479 (D.N.J. 1993) (quoting *Van*

*Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).

As directed by the Third Circuit Court of Appeals in *Jumara*, the reviewing court must balance private and public interest factors to determine whether the litigation would more conveniently proceed and the interests of justice would be better served by a transfer. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). The moving party bears the burden of establishing "both the propriety of venue in the transferee district and jurisdiction over all of the defendants." *LG Elecs. Inc. v. First Int'l Computer*, 138 F. Supp. 2d 574, 586 (D.N.J. 2001) (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970)). Once the reviewing court determines that jurisdiction and venue would be proper in the transferee district, the court, then, must consider two sets of factors identified by the Third Circuit in *Jumara*. *See Jumara*, 55 F.3d at 879.

The first category of factors considers the private interests of the litigants and includes: (1) "plaintiff's forum preference"; (2) "defendant's preference"; (3) "whether the claim arose elsewhere"; (4) the convenience to the parties as indicated by their relative physical and financial condition"; (5) "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora"; and (6) "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id.*

The second category of factors considers the public's interests and include: (1) "the enforceability of the judgment"; (2) "practical considerations that could make the trial easy, expeditious, or inexpensive"; (3) "the relative administrative difficulty in the two fora resulting from court congestion"; (4) "the local interest in deciding local controversies at home"; (5) "the public policies of the fora"; and (6) "the familiarity of the trial judge with applicable state law in diversity cases." *Id.* at 879-80.

The list of factors in both the private and public categories is comprehensive. However, a

Section 1404(a) analysis must be flexible and viewed based on the unique facts of the case. *Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442, 450 (D.N.J. 1999) (citing *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43 (3d Cir. 1988)). While the moving party bears the burden to justify a transfer, it is "not required to show truly compelling circumstances for . . . [change of venue, but rather that] all relevant things considered, the case would be better off transferred to another district." *In re United States*, 273 F.3d 380, 388 (3d Cir. 2001) (citations omitted).

**B. <u>Jurisdiction and Venue in the Southern District of New York</u>**

Preliminarily, this Court must first determine whether this action could have been brought in the transferee district—here, the Southern District of New York—based on both jurisdiction and venue being proper. *Yang v. Odom*, 409 F. Supp. 2d 599, 604 (D.N.J. 2006) (citing *Shutte*, 431 F.2d at 24).

Defendant submits that the Southern District of New York would have subject matter jurisdiction over this case based on diversity jurisdiction, pursuant to 28 U.S.C. § 1332. (ECF No. 20-1 at 8). Plaintiff's papers do not dispute Defendant's contention. However, the parties dispute whether personal jurisdiction and venue in New York would be proper.

Turning first to personal jurisdiction, the Court is not persuaded by Plaintiff's position that it is "far from clear that [Defendant] would subject himself to personal jurisdiction in" the Southern District of New York based on a prior pattern of forum shopping. (ECF No. 23 at 27). As Defendant confirms, he performed "the vast majority" of his work "review[ing] the articles identified in the Complaint" from Newsweek's Manhattan headquarters. (ECF No. 20-3 ¶ 7). Accordingly, Defendant expressly represents to this Court that he consents to personal jurisdiction in New York if the instant case is transferred. (ECF No. 20-3 ¶ 8). The United States Supreme Court has recognized that "personal jurisdiction is a waivable right" and "a litigant may give

'express or implied consent to the personal jurisdiction of the court.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) (quoting *Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 703 (1982)). Based on Defendant's consent to the personal jurisdiction of the Southern District of New York, the Court finds Defendant is subject to personal jurisdiction in that forum.

As to venue, a plaintiff may file suit in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). "[F]or venue to be proper, *significant* events . . . *material* to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere." *Lincoln Ben. Life Co.*, 2026 U.S. Dist. LEXIS 45889, at *26 (quoting *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005)). This inquiry is more "qualitative" than "quantitative," turning on "the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not simply by adding up the number of contacts" with the forum. *Id.* (quoting *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432-33 (2d Cir. 2005)). Again, Defendant performed "the vast majority" of his work "review[ing] the articles identified in the Complaint" in Manhattan, which is within the Southern District of New York. (ECF No. 20-3 ¶ 7). Moreover, Plaintiff's Complaint alleges that Defendant conspired with four co-conspirators, (*see* Compl., ¶¶ 2-5), all of whom are defendants in the New York Action. Plaintiff alleges venue is proper for the New York Action in the Southern District of New York because these individual defendants reside there. (New York Compl., ¶ 21). Accordingly, on this record, the Court finds venue would have been proper had Plaintiff filed the instant action against Defendant in the Southern District of New York.

Therefore, based on the foregoing, the Court finds that Plaintiff could have filed this case in the Southern District of New York. The Court concludes this threshold issue has been satisfied.

### C. **The *Jumara* Factors**

The Court next considers the *Jumara* private and public interest factors. Considering the private interest factors first, Plaintiff's choice of forum is not entitled to much, if any, deference in this case. It is true that a plaintiff's choice of forum is important to a Section 1404(a) analysis, particularly when the plaintiff chose its home forum. *See Sandvik v. Cont'l Ins. Co.*, 724 F. Supp. 303, 307-08 (D.N.J. 1989). But here, Plaintiff has not chosen its home forum. Plaintiff is a citizen of California and does not appear to have any link to New Jersey. (*See* Compl., ¶ 11). "[C]ourts give substantially less weight to a plaintiff's forum choice when the dispute at the heart of a lawsuit occurred almost entirely in another state." *Santi v. Nat'l Bus. Records Mgmt., LLC*, 722 F. Supp. 2d 602, 607 (D.N.J. 2010). Here, both the New York Action and the instant action are substantially similar and arise out of nearly the same operative facts based on the allegedly defamatory articles published in Manhattan, New York, and thus Plaintiff's choice of forum here loses its significance. In any event, the plaintiff's forum choice is not dispositive, and courts can transfer cases when the other interests of convenience and justice weigh in favor of transfer. *See Am. Tel. & Tel. Co. v. MCI Commc'ns Corp.*, 736 F. Supp. 1294, 1306 (D.N.J. 1990). Accordingly, the Court finds that Plaintiff's choice of forum does not support retaining this case.

As to the second private factor, Defendant's preference, this factor weights in favor of transfer. As to the third factor, whether the claim arose in another forum, Defendant, again, represents that he performed "the vast majority" of his work "review[ing] the articles identified in the Complaint" in New York. (ECF No. 20-3 ¶ 7). Defendant's alleged co-conspirators are also based in New York, where they are parties to the New York Action. (New York Compl., ¶ 21). Accordingly, this factor weighs in favor of transfer.

As to the convenience of the parties and witnesses and the location of relevant records, the

Court finds that these factors are neutral. The Court agrees with Defendant that New York will be the more convenient forum for producing documents and taking testimony from witnesses. Newsweek is headquartered in New York, (ECF No. 20-3 ¶ 3), where Defendant and his alleged co-conspirators all work (*id.*, ¶ 7; New York Compl., ¶ 21). Further, the alleged co-conspirators reside in New York and are parties to the New York Action. (*See generally* New York Compl.). Thus, even if Plaintiff names different defendants in each case, many documents and the testimony of several witnesses located in New York will likely be relevant to both lawsuits. While Plaintiff argues that it has no ties to New York, Plaintiff chose to file the New York Action undercutting its lack of convenience argument. (ECF No. 23 at 23). At the same time, however, it would not be greatly inconvenient for the parties to produce discovery in New Jersey given its proximity to New York. Further, Defendant does not identify any witnesses or documents that would be unavailable if this case proceeded in this District. Accordingly, the Court finds that at best this factor tips slightly in favor of transfer.

Turning then to the public interest factors, the Court first highlights the strong public policy against "duplicative litigation . . . in different fora," and the need to avoid "the possibility of inconsistent results" in parallel lawsuits. *CIBC World Markets, Inc. v. Deutsche Bank Sec., Inc.*, 309 F. Supp. 2d 637, 651 (D.N.J. 2004). To that end, the Supreme Court has cautioned courts against allowing "two cases involving precisely the same issues" to proceed simultaneously "in different District Courts." *Id.* (quoting *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960)). Such duplicative litigation wastes "time, energy[,] and money," which Section 1404(a) "was designed to prevent." *Id.* (quoting *Cont'l Grain Co.*, 364 U.S. at 26). Consistent with the Supreme Court's admonition, courts in this district regularly transfer "cases to another forum when a related action [is] pending there." *Id.* (citing cases).

The Court disagrees with Plaintiff's argument that the instant case and the New York Action are not duplicative. As this Court has previously found, both cases arise out of nearly the same operative facts based on the allegedly defamatory articles reviewed by Defendant and then published by his co-conspirators in New York. (*Compare* Compl., ECF No. 1, *with* New York Compl.). In the New York Complaint, Plaintiff repeatedly references Defendant's alleged role in the defamation scheme. (*See* New York Compl., ¶¶ 3-5, 7-9, 118-37, 139-42, 144-45, 147-48). In short, practical considerations could be gained by transferring this matter to the Southern District of New York where Plaintiff filed a nearly identical action against other Newsweek employees. Such efficiencies arise mainly from the Southern District of New York's familiarity with the underlying core facts and legal issues in the pending New York Action as well as the ability to coordinate both cases for discovery and/or for trial. Accordingly, such practical considerations strongly support transfer of this case.

As to the remaining public interest factors, neither party addresses the enforceability of a judgment. The Court finds the court congestion factor neutral, as Defendant correctly observes that "there is no appreciable difference between the caseload[s] in" this District and the Southern District of New York. (ECF No. 20-1 at 10 n.5). The local interest factor is also neutral, as both New York and New Jersey have an interest in adjudicating this case, although New York's interest applies to be slightly greater. While Defendant lives in New Jersey, much of the conduct alleged in the Complaint in this case occurred in New York, where Defendant reviewed "the vast majority" of the articles and where the other Newsweek employees published them. (ECF No. 20-3 ¶¶ 2-3, 5, 7). Lastly, the judge presiding over the New York Action is "completely capable of interpreting and applying New Jersey law, if he or she finds that New Jersey law is applicable." *Depuy Synthes Sales, Inc. v. Gill*, 2013 U.S. Dist. LEXIS 154825, at *38-39 (D.N.J. Oct. 29, 2013); *Yocham v.*

*Novartis Pharms. Corp.*, 565 F. Supp. 2d 554, 560 (D.N.J. 2008) (recognizing that while a court's familiarity with relevant state law "could tip the balance in an otherwise close call," "federal district courts are regularly called upon to interpret the laws of jurisdictions outside of the states in which they sit"). On balance, the majority of relevant public interest factors weigh in favor of transfer.

Accordingly, after considering both the private and public interest factors as dictated by the Third Circuit in *Jumara*, this Court finds that, on balance, transfer of this case to the Southern District of New York is appropriate pursuant to Section 1404(a).

## III. CONCLUSION

For the foregoing reasons, the Court transfers this case to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a). The Clerk shall not transfer this case for fourteen (14) days. *See* L. Civ. R. 72.1(c)(1)(C).

In light of its transfer decision, the Court declines to address the merits of the parties' arguments regarding dismissal.

**s/ Jessica S. Allen**
**Hon. Jessica S. Allen**
**United States Magistrate Judge**

**Dated: September 2, 2026**